| **Ahmad v City of New York** |
|:---:|
| 2025 NY Slip Op 31983(U) |
| June 4, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 160768/2024 |
| Judge: Hasa A. Kingo |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. HASA A. KINGO**                     PART                          **05M**
                                                                *Justice*

-------------------------------------------------------------------------------X

HUDA AHMAD,

                              Plaintiff,

                      - v -

CITY OF NEW YORK, ANTONIO PAGAN

                         Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 160768/2024 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39

were read on this motion for                    SUMMARY JUDGMENT                    .

Plaintiff, Huda Ahmad ("Plaintiff"), seeks partial summary judgment pursuant to CPLR § 3212 against Defendant City of New York ("the City") on several causes of action under the New York City Human Rights Law ("NYCHRL"). Specifically, Plaintiff asks this court to declare, as a matter of law, that she was subjected to both a sexually hostile work environment and religious discrimination at the hands of her supervisor, Captain Antonio Pagan ("Pagan," "Captain Pagan") and that the City, as her employer, is strictly liable under NYCHRL § 8-107(13)(b) for those civil rights violations. Plaintiff further seeks dismissal of all defenses the City has asserted to these claims.

For the reasons that follow, the court grants Plaintiff's motion in its entirety. In particular, the City is held strictly liable as a matter of law for Captain Pagan's repeated, unwelcome sexual advances and disparaging comments about Plaintiff's Muslim faith. No genuine issue of material fact exists as to notice or causation: the New York City Police Department ("NYPD"), acting on the City's behalf, fully substantiated Plaintiff's allegations through its own internal investigation and three-day disciplinary trial, finding Pagan guilty of sexual harassment, hostile work environment, and religious discrimination. The City's attempt to re-litigate those determinations in this civil forum is foreclosed under NYCHRL's strict liability standard for supervisor misconduct.

## BACKGROUND

Plaintiff Ahmed, a Muslim woman, joined the NYPD on January 7, 2011 as a Police Communications Technician ("PCT") and, since 2016, worked in the Bronx Communications Section, PSAC 2. (SOF ¶ 1–4.) At all relevant times, Captain Antonio Pagan—himself a city employee—served as the Commanding Officer of PSAC 2 and was Plaintiff's direct supervisor. (SOF ¶ 5–7.) Pagan's position as an NYPD captain placed him squarely within the scope of

**160768/2024   AHMAD, HUDA vs. CITY OF NEW YORK ET AL**
**Motion No.  001**

**Page 1 of 11**

1 of 11

"supervisors" whose unlawful discriminatory acts render their employer strictly liable under the NYCHRL.

In May 2023, Plaintiff filed a federal lawsuit in the Southern District of New York, alleging sexual harassment, gender discrimination, and religious discrimination under Title VII, the NYCHRL, and New York State Executive Law § 296. (SOF ¶ 2–5; Exh. A–D.) On November 13, 2024, the parties voluntarily dismissed that action without prejudice to refiling in state court. (SOF ¶ 9–13; Exh. E–H.) Accordingly, Plaintiff commenced this state-court action on November 18, 2024.

Plaintiff alleges that from early 2018 through August 2021, Captain Pagan subjected Plaintiff to a continuous course of harassing conduct, which escalated over time. In in-person encounters, Plaintiff alleges that Pagan repeatedly made unwanted sexual comments—pressuring her to send photographs in exchange for time-off or discipline reductions. On March 8, 2021, Plaintiff alleges that Pagan propositioned Plaintiff, telling her, "Sit on my lap and I will warn and admonish" her pending disciplinary case if she complied; Plaintiff secretly recorded that exchange. (SOF ¶ 20–24; Exh. J at 3–5.) On multiple occasions, Plaintiff states that Pagan also reached across his desk to touch Plaintiff's hand or rub it without her consent when handing her pens or cash to purchase food. (SOF ¶ 24; J at 5.) Separately, on July 20, 2021, Plaintiff states that Pagan sent text messages mocking Plaintiff's Muslim faith—"If you're dressed like a Muslim today take a picture and show me" and "I hope this doesn't affect you and cause you to go hungry today"—further creating a hostile work environment. (SOF ¶ 20–24; Exh. J at 5–6.)

On August 3, 2021, Plaintiff reported these incidents to Lieutenant Waldo Roman, who in turn referred the matter to Inspector Charles Barton, then to the NYPD's Office of Equal Employment Opportunity ("OEEO"). (SOF ¶ 16–19.) By August 5, 2021, Pagan was administratively transferred, and on August 6, 2021, Plaintiff filed a formal OEEO complaint. (SOF ¶ 17–19; Exh. I.)

The OEEO investigators, whose reports include text logs, audio clips, and a transcript of Plaintiff's secret recording, found probable cause to charge Pagan with four counts of misconduct—

1. "Making an inappropriate sexual comment" on March 8, 2021;
2. "Subjecting [Plaintiff] to unwanted physical contact" between February 1, 2020 and July 31, 2021;
3. "Making a disparaging remark regarding membership in a protected class" on July 20, 2021; and
4. "Making a disparaging remark regarding membership in a protected class" on July 20, 2021.
   (Exh. J at 2–3.)

From June 4–6, 2024, the NYPD held a three-day disciplinary trial before Judge (Assistant Deputy Commissioner) Jeff S. Adler—an NYPD employee. (SOF ¶ 25–27.) Testimony from Plaintiff, Pagan, and other fact-witnesses was presented, together with video footage of Pagan's

**160768/2024   AHMAD, HUDA vs. CITY OF NEW YORK ET AL**
**Motion No.  001**

**Page 2 of 11**

2 of 11

March 8 remark, text-message logs, and the OEEO investigators' reports. (Exh. J at 3–4.) After weighing the evidence, Judge Adler found Pagan guilty on all four counts:

- **Specification 1 (March 8, 2021 sexual comment):** Plaintiff testified, and a secretly recorded video confirmed, that Pagan said, "Sit on my lap and I'll warn and admonish" her pending disciplinary case—an unequivocal quid pro quo sexual proposition made in his office. Plaintiff felt humiliated and vulnerable. Pagan's claim that it was a joke was rejected as incredible; he knowingly crossed the line from crude banter into harassment of a subordinate. (Exh. J at 12–15; SOF ¶ 24–26.)
- **Specification 2 (unwanted physical contact, Feb 2020–Jul 2021):** Plaintiff credibly testified that on multiple occasions, Pagan—while handing her pens or cash—placed his hand over hers and briefly rubbed it. He admitted those brief touches but characterized them as "friendly," an excuse Judge Adler rejected. (Exh. J at 15–17; SOF ¶ 24–26.)
- **Specifications 3 & 4 (July 20, 2021 disparaging religious remarks):** On Eid al-Adha, Pagan texted, "If you're dressed like a Muslim today take a picture and show me," then added, "I hope this doesn't affect you and cause you to go hungry today." Plaintiff was deeply offended; Pagan later claimed these texts were "jokes," which Judge Adler found unpersuasive. Those remarks violated department policy forbidding disparagement of a protected class. (Exh. J at 17–18; SOF ¶ 20–24.)

Judge Adler determined each incident independently "prejudicial to the good order, efficiency, or discipline" of the NYPD, in violation of Patrol Guide § 205-36. (Exh. J at 14–18.) On July 29, 2024, he recommended Pagan's termination. (Exh. J at 18.)

On August 30, 2024, Police Commissioner Edward Caban—who is also an NYPD employee—reviewed Judge Adler's decision. He affirmed that Pagan's conduct violated Department rules but, departing from Judge Adler's penalty, imposed a sixty-day forfeiture of vacation credit instead of termination. (SOF ¶ 30; Exh. J at 19; SOF ¶ 100–106.) Thus, in the NYPD's own disciplinary system, all findings of fact relevant to Plaintiff's NYCHRL claims have been conclusively established against Pagan and, by extension, against the City.

On November 18, 2024, Plaintiff initiated this action in state court, asserting nine causes of action under the NYCHRL and New York State Executive Law § 296 (NYSCEF Doc No. 1). Pagan filed an answer with cross-claims against the City on January 13, 2025 and the City filed answers to the complaint and cross-claims on February 6, 2025 (NYSCEF Doc Nos. 6, 11, 12). Plaintiff now moves for partial summary judgment on the following NYCHRL claims, all of which impose strict liability on the employer for supervisor misconduct:

1. **Count I (NYCHRL § 8-107(13)(b)):** Sex/Gender Discrimination—Sexual Harassment, Strict Liability
2. **Count II (NYCHRL § 8-107(13)(b)):** Sex/Gender Discrimination—Hostile Work Environment, Strict Liability
3. **Count III (NYCHRL § 8-107(13)(b)):** Religious Discrimination, Strict Liability
4. **Count VI (NYCHRL § 8-107):** Sex/Gender Discrimination/Sexual Harassment

**160768/2024   AHMAD, HUDA vs. CITY OF NEW YORK ET AL**
**Motion No.  001**

**Page 3 of 11**

3 of 11

[* 3]

5. **Count VII (NYCHRL § 8-107):** Sex/Gender Discrimination—Hostile Work Environment
6. **Count IX (NYCHRL § 8-107):** Religious Discrimination—Hostile Work Environment

Plaintiff relies upon her own sworn affidavit, the OEEO investigative file (Exh. I), and Judge Adler's disciplinary decision (Exh. J) to establish as a matter of law that a hostile work environment—both sexual and religious—was created by Pagan's repeated, unwelcome conduct, and that the City is strictly liable for that misconduct under the NYCHRL. The City opposes only on evidentiary grounds, arguing (i) that discovery is incomplete and the motion is premature, (ii) that records of the OEEO file and disciplinary trial are inadmissible hearsay or non-public, and (iii) that the City should not be bound by the NYPD's own findings.

## ARGUMENTS

In support of the instant motion, Plaintiff contends that the NYPD's own internal findings conclusively prove each element of her strict-liability claims under the NYCHRL. First, Plaintiff argues that Pagan undoubtedly made repeated "unwelcome sexual advances"—face-to-face *quid pro quo* propositions, unsolicited hand-rubbing, overtures for dating, and incessant requests for intimate photographs—over an extended period. In Plaintiff's assessment, those acts satisfy the NYCHRL's definition of sexual harassment. Second, Plaintiff contends that Pagan's July 20, 2021 text messages expressly disparaged Plaintiff's Muslim faith and referenced her potential to fast, satisfying the NYCHRL's prohibition against discriminatory remarks about religion. Third, Plaintiff stresses that Pagan was indisputably her supervisor, so under NYCHRL § 8-107(13)(b), the City is strictly liable for his harassing and discriminatory acts. Plaintiff relies on the OEEO investigative report, which largely corroborates her sworn deposition testimony and is properly admitted under CPLR § 4518 as a business record. Plaintiff further relies on Judge Adler's trial and voluminous record—video, audio, text logs, fact-witness testimony—and his written decision finding Pagan guilty on all four specifications. As Judge Adler was an NYPD employee, his official written decision is a party admission under CPLR § 4549, and entitled to a presumption of authenticity under CPLR § 4540-a. Having met her burden of establishing the City's strict liability, Plaintiff submits that the only question remaining is damages.

The City contends that summary judgment is premature because formal discovery in this action is not "complete"; it claims that depositions of Plaintiff and Pagan may reveal facts that create triable issues. Second, the City argues that the OEEO file and Judge Adler's written decision are inadmissible hearsay: OEEO investigative notes lack foundation under CPLR § 4518(a); Judge Adler's decision—though unsigned by the Commissioner—is not a "public record" under CPLR § 4540-a and cannot be deemed a non-hearsay party admission under CPLR § 4549 because it was not authored by an "authorized spokesperson" on the City's behalf. Third, the City urges that NYPD's internal disciplinary proceedings employ "unique standards" of proof and "internal policy" that should not bind the City in a separate civil action. The City thus insists that whether Pagan's acts constitute a statutory violation remains a question of fact for trial.

In reply, Plaintiff asserts that the Judge Adler's written decision is admissible as a writing filed in a public office pursuant to CPLR § 4540-a. Plaintiff notes that the decision is published on

**160768/2024   AHMAD, HUDA vs. CITY OF NEW YORK ET AL**                **Page 4 of 11**
**Motion No.  001**

[* 4]                                                    4 of 11

the NYPD's website as a public record.[1] Plaintiff reiterates that Judge Adler's written decision is admissible as a party admission because Judge Adler is an employee of the City. Plaintiff further argues that the doctrine of judicial estoppel precludes the City from taking a position contrary or inconsistent to the position it took at the disciplinary hearing.

Pagan has filed cross-claims against the City but does not directly oppose Plaintiff's motion. Pagan concedes he engaged in the conduct found by Judge Adler, but asserts that the City's civil liability must be evaluated under broader, federal case law—requiring proof of "severe or pervasive" discrimination—rather than under the NYCHRL's stricter standard. Pagan also suggests that if the OEEO findings and Judge Adler's decision are admissible, their factual findings may be subject to cross-examination in a civil trial. Regardless, Pagan's own admissions concede each element of Plaintiff's statutory claims, and he does not dispute that, as her supervisor, his conduct is imputed to the City.

## DISCUSSION

Summary judgment will be granted "if the proponent of the motion shall show by affidavit and other appropriate means that there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law" (CPLR § 3212[b]). Once the movant makes a prima facie showing, the burden shifts to the non-moving party to produce "evidentiary proof in admissible form sufficient to require a trial of material questions of fact" (*Zuckerman v. City of New York*, 49 NY2d 557, 562 [1980]; *Winegrad v. New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Hearsay or unverified allegations do not suffice (CPLR § 3212[b]). On cross-motions for summary judgment, each party's submissions are reviewed in the light most favorable to the other.

Here, Plaintiff has met her burden by producing: (i) her own affidavit attesting to the harassing conduct (NYSCEF 15); (ii) the OEEO investigative report, which includes sworn statements, text-message logs, audio, and video footage (NYSCEF 23); and (iii) Judge Adler's written decision, including his credibility findings and detailed factual findings (NYSCEF 24). The City, as the non-moving party, has failed to raise any question of material fact or present any admissible evidence to rebut these uncontroverted records. The court will address its findings, as well as the City's threshold evidentiary objections, below.

### A. The OEEO File and Disciplinary Decision Are Admissible Under New York Law

Before reaching the merits, the court must resolve the City's threshold evidentiary objections. The City argues that the OEEO file is inadmissible because no foundation has been laid under CPLR § 4518(a), and that Judge Adler's disciplinary decision cannot be admitted as a "public record" under CPLR § 4540-a or as a party admission under CPLR § 4549. These arguments fail.

CPLR § 4518(a) creates a business-records exception to the hearsay rule, admitting records kept "in the regular course of any business . . . if it was the regular course of such business . . . to make such record" (CPLR § 4518[a][1]–[3]). The OEEO report was prepared contemporaneously

---

[1] https://nypdonline.org/files/919528_08302024_2024057.pdf

**160768/2024   AHMAD, HUDA vs. CITY OF NEW YORK ET AL**
**Motion No.  001**

**Page 5 of 11**

5 of 11

by OEEO investigators—NYPD employees—charged with investigating discrimination complaints. It contains their summaries of Plaintiff's sworn 50-h testimony, phone-log analysis, text-message printouts, and their own written recommendations. (Exh. I at pages 113–114, 125–126.) Plaintiff's counsel has properly laid the foundation through an affidavit by an OEEO custodian of records, attesting that these documents were generated and maintained in the ordinary course of the NYPD's discrimination investigations. (SOF ¶ 10; Exh. I.) That showing suffices under CPLR § 4518(a). (*see K & K Enters. Inc. v. Stemcor USA Inc.*, 100 AD3d 415, 416–17 [1st Dept 2012][party admission exception does not foreclose the separate "business records" exception under § 4518]). In any event, the OEEO file is also admissible under CPLR § 4540-a and § 4549, as the City effectively concedes by failing to contest its authenticity or origin.

The City contends that Judge Adler's report is not a "public record" because it was not filed in a public office in the sense of a courtroom transcript or sealed agency report, and that it cannot be admitted as a party admission because it was not authored by a high-ranking policymaker "on the subject." Both contentions fail under the plain text and legislative intent of new CPLR § 4540-a and § 4549.

Effective May 28, 2021, the Legislature amended CPLR by adding § 4540-a, which provides that "material produced by a party in response to a demand . . . for material authored or otherwise created by such party shall be presumed authentic when offered into evidence by an adverse party." The trial judge must therefore presume the authenticity of materials "authored or otherwise created" by the City—including Judge Adler's written decision—absent a preponderance of evidence showing otherwise. Here, the City does not even dispute that Judge Adler's decision was issued as an official NYPD document and has been publicly published on the NYPD website. Under § 4540-a, the court must treat it as authentic.

The 2021 amendment of CPLR § 4549 broadened the prior "speaking agent" rule to include any statement by an opposing party's employee or agent "on a matter within the scope of that relationship and during the existence of that relationship." Judge Adler, as the NYPD's Assistant Deputy Commissioner of Trials, unquestionably was "employed by the City" and was acting within the scope of his duties when he issued findings of fact and credibility. His written decision therefore qualifies as a non-hearsay admission by a party opponent (*see Broome Lender LLC v. Empire Broome LLC*, 220 AD3d 611 [1st Dept 2023][using § 4549 to admit internal corporate documents as party admissions]).

The City's contrary argument—that § 4549 requires an "authorized spokesperson" to speak "on the subject"—misreads § 4549's plain text and legislative history. The Legislature explicitly "eliminate[d]" the old "speaking agent" requirement, making admissible "any statement made by the opposing party's agent or employee within the scope of that relationship" (*Moises-Ortiz v. FDB Acquisition LLC*, 83 Misc.3d 1283(A), *5–6 [Sup. Ct. NY County 2024] [rejecting identical argument]). Judge Adler was, by his job title, an NYPD employee empowered to adjudicate disciplinary charges—a matter squarely within his scope of employment. There is no "unspoken directive" or "internal policy" exception that isolates his decision from § 4549's reach. Rather, the law is clear: where a public-sector employee issues a "decision on behalf of" his employer, that writing is a party admission (*see BL Doe 5 v. Fleming*, 229 AD3d 1076, 1077–78 [4th Dept 2024]).

**160768/2024  AHMAD, HUDA vs. CITY OF NEW YORK ET AL**                    **Page 6 of 11**
**Motion No.  001**

6 of 11

Judge Adler's decision also qualifies as a "public office" writing. The NYPD is a City agency, whose disciplinary tribunals are administrative bodies created by the City charter. Judge Adler's written decision is a public record of that tribunal. It is posted on the NYPD's public website, availing it to all citizens. Under CPLR § 4540(1), "[e]very writing, required by law to be filed in any public office, or in a public officer's custody, is presumed to be genuine." Here, the decision was filed with and retained by the NYPD's Department Advocate's Office—an official "public office"—and thus is entitled to the same presumption (*see Moises-Ortiz*, 83 Misc.3d 1283(A) at *6 [treating similar disciplinary decisions as public records]; *Cohen v City of New York*, 2001 NY Slip Op 50028(U) [Sup Ct, NY County 2001][admitting hearing examiner's decision against City]).

In short, Judge Adler's written decision and the OEEO file are self-authenticating under CPLR §§ 4540-a and 4518, and are admissible party admissions under CPLR § 4549. No written objection to authenticity has been offered by the City. Accordingly, those materials must be considered on this motion.

Even setting aside the admissibility of Judge Adler's written findings, it is nonetheless significant that, during oral argument on June 3, 2025, the City conceded that the underlying evidence relied upon by Judge Adler remains admissible. This evidence includes, in relevant part, testimony from Officer Pagan in which he acknowledged engaging in unwanted physical contact with Plaintiff. Accordingly, while Judge Adler's conclusions may be subject to exclusion, the evidentiary materials forming the basis of those conclusions—such as testimony, text messages, and related documents—stand unopposed as to admissibility. The City has not raised, and indeed has expressly waived, any objection to their consideration. The transcript of the June 3, 2025 oral argument is incorporated herein by reference.

## B. The NYPD Findings Establish Each Element of Plaintiff's Strict-Liability Claims

Under the NYCHRL, an employer is strictly liable for discriminatory or harassing acts committed by a supervisor—defined as anyone "with the authority to undertake or recommend tangible employment decisions affecting the employee"—"regardless of whether the [employer] knew or should have known of such discriminatory conduct and regardless of whether the [employer] attempted to remedy the discriminatory conduct." (NYC Admin. Code § 8-107(13)(b); *Forrest v. Jewish Guild for the Blind*, 3 NY3d 295, 307–08 [2004]). Superiors' misconduct is imputed automatically; no showing of negligent retention, training, or tolling of notice is required.

To prevail on a hostile-work-environment claim under the liberal standard of the NYCHRL, a plaintiff must show only that: (1) she was treated less well than other employees because of her protected status; (2) "discrimination was a motivating factor" in the conduct; and (3) that "the conduct [took place] in the terms, conditions or privileges of employment." (*Chin v. New York City Hous. Auth.*, 106 AD3d 443, 445 [1st Dept 2013]). Proof of "severity or pervasiveness" goes solely to "the level of damages," not to liability. (*Williams v. New York City Hous. Auth.*, 61 AD3d 71, 76 [1st Dept 2009]). Reasonable inferences are drawn in the light most favorable to the non-moving party.

**160768/2024   AHMAD, HUDA vs. CITY OF NEW YORK ET AL**                    **Page 7 of 11**
**Motion No.  001**

[* 7]                                                         7 of 11

In this case, the NYPD's own adjudication resolves every element in Plaintiff's favor:

1. **Protected Status and Unequal Treatment.** Plaintiff is a Muslim woman, belonging to two statutorily protected categories: sex/gender and religion. Captain Pagan repeatedly made unwelcome sexual advances—quid pro quo propositions, unconsented hand-rubbing, graphic sexual remarks—and disparaging comments about her Muslim faith. Those acts satisfy the NYCHRL's threshold for "hostile work environment," as such conduct plainly treats Plaintiff "less well" because of her sex and religion. (SOF ¶ 20–24.) No other inference is reasonable.

2. **Supervisor Status and Strict Liability.** Pagan was Plaintiff's direct supervisor; as such, he had the authority to grant or deny her shift changes, time off, discipline, and other workplace "privileges." (SOF ¶ 5–7.) His *quid pro quo* offer—"sit on my lap and I'll warn and admonish"—clearly linked sexual favors to workplace decisions. NYCHRL § 8-107(13)(b) thus makes the City strictly liable for his misconduct. (*see Forrest*, 3 NY3d at 307–08). The City cannot avoid liability by showing it had policies or training programs; under the NYCHRL, an employer is "responsible for the offensive acts of its supervisor, even if the employer is unaware of the supervisor's misconduct" (*id*. at 307 n 3).

3. **Hostile Work Environment—Sexual Harassment.** Pagan's repeated, unsolicited propositions to Plaintiff—both in person and in text—established a hostile environment. Judge Adler found these comments to be unambiguously unwanted. In Dept. Ex. 1 (video), he can be heard offering to resolve her disciplinary case in exchange for sitting on his lap. (Exh. J at 14–15.) In Dept. Ex. 2 (video), he again asked her to sit next to him to discuss the same CD, followed by a remark about "blowing him a kiss." (*id*. at 15.) In various text messages (Dept. Ex. 7), he demanded "pies" in exchange for other benefits, e.g., "If ur dressed like a Muslim today take a picture and show me," and "I hope this doesn't affect you and cause you to go hungry today." (Exh. J at 5–6; SOF ¶ 20–24.) Judge Adler's credibility findings—"Bowman was in a vulnerable position . . . . I credit Bowman's testimony that she was merely playing along . . . ." (Exh. J at 13–14)—are insulated from further dispute (*see Zuckerman*, 49 NY2d at 562, *supra*).

4. **Hostile Work Environment—Religious Discrimination.** On July 20, 2021, Pagan texted that Plaintiff—dressed in Muslim attire for Eid—should "take a picture and show me," and later quipped, "I hope this doesn't affect you and cause you to go hungry today." (SOF ¶ 20–24; Exh. J at 5–6, 17–18.) Judge Adler concluded these statements disparaged her Muslim faith and "underscored how poor was his judgment, and how egregious were his actions." (Exh. J at 17–18.) Such religious derogation, directed at a subordinate, plainly satisfies NYCHRL § 8-107(13)(b).

5. **Unwanted Physical Contact.** Between February 2020 and July 2021, Pagan repeatedly placed his hand over Plaintiff's when handing her money or a pen; on one occasion, he briefly rubbed her hand, again in his office. (SOF ¶ 24; Exh. J at 15–17.) Judge Adler credited Plaintiff's testimony that these touches made her "very uncomfortable," and rejected Pagan's claim they were "friendly." (Exh. J at 16–17.) That "unwanted physical contact" further exacerbated the hostile work environment.

**160768/2024   AHMAD, HUDA vs. CITY OF NEW YORK ET AL**                            **Page 8 of 11**
**Motion No.  001**

8 of 11

Because Plaintiff has established that Pagan's sexually and religiously harassing conduct was both unwanted and harmful—and because he had supervisory authority—NYCHRL § 8-107(13)(b) renders the City strictly liable as a matter of law. No reasonable jury could rule otherwise.

### C. The City's Remaining Arguments Fail

The City contends that summary judgment is premature because no depositions of Plaintiff or Pagan have been taken in this state-court action. It claims "facts essential to oppose the motion" may exist that are not yet revealed. But the City fails to specify any particular fact it expects to uncover that could create a triable issue. By contrast, the NYPD's disciplinary process—which included direct testimony from both Plaintiff and Pagan, plus multiple fact-witnesses—fully developed the record on every relevant point of harassment and discrimination. Now the City argues that "further evidence" could arise, yet identifies no specific gap in the record. Courts routinely reject similar "fishing expedition" arguments. (*see Barreto v. City of New York*, 194 AD3d 563 [1st Dept 2021][denial of motion for premature summary judgment because there were unresolved discovery disputes]). Here, all principal witnesses and documents—Plaintiff's sworn testimony, Pagan's admissions, text logs, videos, OEEO reports, and Judge Adler's decision—are in hand. No fact essential to liability remains hidden. The City's speculation that further discovery might alter these uncontested findings is insufficient to render summary judgment premature.

Likewise, the factual record essential to resolving the issues raised herein lies entirely within the control of the City and its agencies. Indeed, Plaintiff has obtained the relevant materials—including disciplinary records, witness statements, and internal correspondence—through a Freedom of Information Law ("FOIL") request. Thus, the evidentiary foundation upon which this motion rests has been fully developed, and no further discovery is necessary to illuminate the material facts in dispute. Where the operative documents originate from the defendants themselves and have been produced through formal channels, the suggestion that summary judgment would be hasty or uninformed finds no footing in law or equity.

The City urges that the disciplinary tribunal's conclusions should not bind a civil adjudication of identical issues. Yet, under NYCHRL strict liability, an employer is responsible for a supervisor's discriminatory conduct "regardless of whether the [employer] knew or should have known," and regardless of whether it took remedial steps. (Admin. Code § 8-107[13][b]; *Forrest*, 3 NY3d at 307–08, *supra*) By ratifying Judge Adler's unprecedented three-day hearing, confrontational cross-examination, and credibility findings, the City has already accepted those facts as conclusive for disciplinary purposes. The City may disagree with Judge Adler's recommended penalty (and in fact reduced it from termination to a sixty-day vacation forfeiture), but it did not contest the facts. This Court stands in the same position. "Article 78 relief or another civil proceeding does not allow a city to ignore the findings of its own disciplinary tribunal." (*Cohen v City of New York,* 2001 NY Slip Op 50028(U) [Sup Ct, NY County 2001]). Under the principle of collateral estoppel, courts defer to an agency's factual findings when (i) the issues in both proceedings are identical, (ii) the tribunal was a full and fair forum, and (iii) the agency intended its factual findings to be binding (*id*.). Here, the NYPD disciplinary tribunal satisfied every requirement: it painstakingly developed the record on whether Pagan's comments, touching,

**160768/2024   AHMAD, HUDA vs. CITY OF NEW YORK ET AL**
**Motion No.  001**

**Page 9 of 11**

9 of 11

and texts were discriminatory harassment; it issued explicit findings of fact and credibility; and it intended those findings to govern his continued employment. Based on that, those findings bind the City in this civil action.

The City suggests that to prove a hostile work environment under federal law, "severe or pervasive" misconduct must be shown, and that a civil court should apply that federal standard rather than the NYCHRL's more relaxed test. That argument is foreclosed by New York law, which mandates interpretation of the NYCHRL "liberally for the accomplishment of [the] remedial purposes" thereof (Admin. Code § 8-130[a]). The Appellate Division, First Department, has repeatedly held that "when it comes to employment discrimination claims, the NYCHRL provides broader protections than its federal and State counterparts," and that "the standard for maintaining a hostile work environment claim is lower than in Title VII cases," since "questions of severity or pervasiveness are applicable only to damages, not liability"(*Williams*, 61 AD3d at 76, *supra*; *Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 578 S[.D.N.Y. 2012]). Under this more expansive standard, it is undisputed that the City is strictly liable for Pagan's harassment.

*Cohen v. City of New York* affirms this court's discretion to consider evidentiary material developed in prior adjudicative proceedings—such as departmental hearings—when evaluating whether summary judgment is warranted. (*Cohen v City of New York*, 2001 NY Slip Op 50028(U) [Sup Ct, NY County 2001]). In *Cohen*, the court granted summary judgment after thoroughly examining the administrative record from the plaintiff's NYPD disciplinary trial, including sworn testimony, factual findings by the Assistant Deputy Commissioner of Trials, and the Appellate Division's conclusion that the disciplinary action was supported by substantial evidence (*id.*).

The decision reflects a foundational principle: when material facts have already been litigated through a process affording the parties a full and fair opportunity to present their case, the resulting evidentiary record is not merely informative—it may be dispositive (*id.*). The *Cohen* court relied on that prior record both to apply collateral estoppel and to assess whether the plaintiff there could establish elements of a hostile work environment claim (*id.*). It did not require the parties to relitigate those facts anew. Instead, the court drew upon testimony and findings from the earlier proceeding to determine whether any genuine issue of material fact remained (*id.*).

Thus, *Cohen* stands for the proposition that evidence adduced in a prior hearing—so long as it was conducted with due process safeguards—may properly be considered on summary judgment. Doing so serves the twin goals of judicial economy and finality, while also ensuring that litigants do not circumvent prior adverse findings by reframing already-litigated disputes in a new procedural posture.

Here, because the City is strictly liable for any discrimination or harassment by a supervisor, once the harassing conduct is proven, summary judgment on liability is proper. Plaintiff has rendered the question of "severity" or "remedial measures" irrelevant to liability; those issues concern only damages calculation (*see Tropper v. Henry St. Settlement*, 190 AD3d 623, 624–25 [1st Dept 2021]). In this matter, the undisputed facts show that: (i) Pagan repeatedly made unwelcome sexual remarks and unwanted touching (§ 8-107[13][b]); (ii) he disparaged Plaintiff's religion; (iii) he acted as her direct supervisor with power over her assignments and

**160768/2024   AHMAD, HUDA vs. CITY OF NEW YORK ET AL**
**Motion No.  001**

**Page 10 of 11**

10 of 11

discipline; and (iv) the City is strictly liable for his conduct. The City has not introduced any admissible evidence to the contrary. Absent any triable issue, summary judgment is mandated.

For the foregoing reasons, it is hereby

ORDERED that Plaintiff's motion for partial summary judgment on Counts I, II, III, VI, VII, and IX is GRANTED; and it is further

ORDERED that the court finds, as a matter of law, that: (i) Defendant City of New York employs Captain Antonio Pagan, whose harassing conduct was committed within the scope of his employment and constituted sexual harassment, hostile work environment, and religious discrimination; (ii) On March 8, 2021, Pagan made a *quid pro quo* sexual proposition—"sit on my lap . . .warn and admonish"—to Plaintiff, creating a sexually hostile work environment; (iii) Between February 2020 and July 2021, Pagan subjected Plaintiff to unwanted physical contact in the workplace by placing his hand over hers and rubbing it; (iv) On July 20, 2021, Pagan sent text messages disparaging Plaintiff's Muslim faith—"take a picture and show me," and "I hope this doesn't affect you and cause you to go hungry today"—furthering a hostile work environment based on religion; (v) As Plaintiff's direct supervisor, Pagan's harassing conduct is imputed to the City; under NYCHRL § 8-107(13)(b), the City is strictly liable for his discriminatory acts; (vi) No genuine issue of material fact exists as to the foregoing; and it is further

ORDERED that on account of the foregoing, the Clerk of the Court is directed to enter partial summary judgment in Plaintiff's favor on Counts I, II, III, VI, VII, and IX; and it is further

ORDERED that the Clerk of the Court shall enter judgment in favor of Plaintiff on Counts I, II, III, VI, VII, and IX in this action, together with costs and disbursements to be taxed by the Clerk upon submission of an appropriate bill of costs; and it is further

ORDERED that the City's defenses to strict liability and notice are dismissed; and it is further

ORDERED that the parties are directed to appear for a settlement conference before the court in Room 320 of the courthouse located at 80 Centre Street, New York, NY on Monday July 21, 2025 at 12:00 PM.

This constitutes the decision and order of the court.

| **6/4/2025** | | | | |
| **DATE** | | | HASA A. KINGO, J.S.C. | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**160768/2024   AHMAD, HUDA vs. CITY OF NEW YORK ET AL**
**Motion No.  001**

Page 11 of 11

11 of 11